**UNITED STATES of America**

v.

**Louis DUBROW.**

**Cr. No. 61–292–W.**

United States District Court
D. Massachusetts.

Jan. 4, 1962.

102

William J. Koen, Paul J. Redmond, Asst. U. S. Attys., Boston, Mass., for plaintiff.

Monroe L. Inker, Joseph Oteri, Boston, Mass., for defendant.

WYZANSKI, District Judge.

There are before me four motions (filed under Rule 17(c) of the Rules of Criminal Procedure, 18 U.S.C.A.) to quash or modify *subpoenas duces tecum* issued upon the application of the defendant Louis Dubrow.

One motion is by Frank Stanton, president of CBS–TV Network, who has been summoned to bring with him all the records relating to the preparation, filming, and presentation of the CBS–TV documentary, "BIOGRAPHY OF A BOOKIE JOINT." A second motion is by Fred W. Friendly of the same network, who has been summoned to bring substantially the same records. A third motion is by Robert F. Kennedy, the Attorney General of the United States, who has been summoned to bring with him all records relating to the preparation and execution of the arrests made at the Swartz Key Shop, 364 Massachusetts Avenue, Boston, and at 245 Blue Hill Park, Milton on September 29, 1961, "and also all the correspondence with the CBS–TV Network 485 Madison Avenue, New York, New York that relates to preparation, filming and presentation of the CBS–TV documentary, 'BIOGRAPHY OF A BOOKIE JOINT'". And the fourth motion is by Mortimer Caplin, Commissioner of Internal Revenue, who has been summoned to bring, from the Internal Revenue Service records, similar to the two types of Department of Justice records covered in the subpoena to Attorney General Kennedy.

In the hearing before me no one offered in evidence the aforesaid documentary.

Nor indeed was any evidence of any kind offered except for the four subpoenas already recited.

The Assistant United States District Attorney conceded, however, that defendant Dubrow was an employee or associate of the employer who conducted business at the Swartz Key Shop. He also conceded that on a trial of Count I of the indictment before me (charging Dubrow with having engaged in the business of accepting wagers and receiving wagers at Boston in September 1961 without paying the special occupational tax required by 26 U.S.C. § 4411 in violation of 26 U.S.C. § 7203,) the prosecution would offer evidence of Dubrow's activities at the Swartz Key Shop.

Although there was no express agreement on this point, the Court infers from the arguments of counsel that all would be prepared to stipulate (1) that the aforesaid documentary refers to Swartz Key Shop, (2) that many people have seen in the *press* of Massachusetts references to that documentary, and (3) that the documentary shows scenes of a federal so-called raid upon that shop.

In considering the four motions, I am mindful that defendant on December 11, 1961 filed in this Court a motion to dismiss and also a motion for continuance, each of which is due to be heard tomorrow. Among the grounds underlying these two motions are the defendant's claims that the United States Department of Justice and the Internal Revenue Service not merely acquiesced in the CBS filming, but also, in effect, invited and participated in the preparation and production of the documentary. Admittedly, these claims are not stated with the precision and carefully pointed direction that are desirable in pleadings. Yet it is inferrable that defendant intends to bring his claim within the rulings rendered in Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751, Delaney v. U. S., 1st Cir., 199 F.2d 107, 39 A.L.R.2d 1300, and Geagan v. Gavin, 1st Cir., 292 F.2d 244.

For present purposes, I shall assume, *without deciding*, that if the defendant can prove that either the Attorney General, or the Commissioner of Internal Revenue, or one of their authorized subordinates did invite, encourage, or in some other way improperly stimulate CBS to prepare or produce the documentary "BIOGRAPHY OF A BOOKIE JOINT", with the purpose and effect of inflaming public opinion, and thus making it more difficult for defendant Dubrow to secure a fair, impartial trial, then the defendant is entitled to a continuance of his trial until the inflammation of public opinion has subsided.

Upon this assumption it would be relevant for the defendant to offer evidence, *if any there be*, of conversations, correspondence, records, actions, and the like of the Attorney General, the Commissioner of Internal Revenue, or their authorized subordinates which were directed at the forbidden encouragement of the preparation or production of the documentary by CBS.

But, of course, this does not mean that the Court would regard as relevant or significant evidence which merely showed that public officials were aware of, and inactively acquiesced in, the preparation and presentation of a documentary by CBS. The Attorney General has no more power to control a television company from, on its own initiative, presenting a documentary of his and his subordinates' actions, than I have power to control the press from reporting what I do in Court. The First Amendment's policy of a free press and a free reporting by television are always factors to be emphasized. And in this country the virtually unanimous view is that the executive not only lacks constitutional power to suppress a television documentary accurately reporting events, but also ought never to be given this power if freedom is to be maintained.

Of course, if such a documentary interferes with the right of fair trial, with the protection of the judicial power created by Article III of the United States Constitution, or with due process of law, it may be that those who interfere—that is the producing companies and those who

actively conspire with them—may be subject to criminal or other sanctions.

From the foregoing statement of fundamental constitutional doctrines, it follows that defendant's justified claim is to inquire whether the responsible officials of the Department of Justice and the Bureau of Internal Revenue did instigate, incite, or actively intervene in the preparation and production of the documentary.

■ But the subpoenas covered by the four motions go far beyond this appropriate inquiry. The first two subpoenas, those addressed to CBS officials, have almost no precise targets. In the phrase Justice Holmes borrowed from John Quincy Adams, they fail "to strike for the jugular." These first two subpoenas are invalid because in violation of the Fourth Amendment to the United States Constitution they constitute an unreasonable search. They represent a fishing expedition. They do not adequately respect the rights of private parties to be secure in their persons, property, and effects. To paraphrase what Justice Holmes said in Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, 307, 44 S. Ct. 336, 338, 68 L.Ed. 696, the demand was not only general but extended far too widely. If some part of the records summoned be relevant "that possibility does not warrant a demand for the whole. For all that appears * * * [the officers of CBS] would have been willing to produce such papers as they conceived to be relevant to the matter in hand."

It follows that the first two motions to quash must be, and hereby are, granted.

■ With respect to the first half of the other two subpoenas, those directed to the Attorney General and the Commissioner of Internal Revenue, the rulings made with respect to the first two subpoenas apply.

There is, however, need to invoke other principles in considering the second half of the third and fourth subpoenas. The defendant Dubrow specifically asks the Attorney General and the Commissioner of Internal Revenue for Department of Justice and Internal Revenue Service "correspondence with the CBS–TV Network * * * that relates to the preparation, filming, and presentation of the CBS–TV documentary, 'BIOGRAPHY OF A BOOKIE JOINT.'" Such records are precisely defined in the subpoena. They are, or may be, relevant under the doctrine of Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751.

But two barriers remain. One is a doubt whether at this stage a sufficient foundation for their production has been laid. The other barrier is that these are government records. As heads of the Department of Justice and the Internal Revenue Service, respectively, Attorney General Kennedy and Commissioner Caplin assert the privilege to keep these records confidential as official secrets.

At this stage of the case, it is sufficient for me to elaborate on the first of these two barriers. The defendant Dubrow, whose counsel procured the subpoenas, has not as yet persuaded me that there is a reasonable probability that there exists in official files a record that the government invited, incited, or improperly encouraged the preparation or production of the documentary. No testimony even slanting in this direction has been offered. The documentary itself has not been shown to the Court. There is no evidence of direct contacts between CBS officials and public officials. And, above all, the very pleadings before me, that is, defendant's motion to dismiss and his motion for a continuance, show that his counsel has never clearly distinguished between what a governmental official may know and acquiesce in, on the one hand, and what that official may aid and abet. Much too little has been here alleged or proved by defendant, for this Court now to permit a search on the wholly unsupported assumption that public authorities *conspired* to deny the defendant a fair trial.

The third and fourth motions to quash must also be and hereby are, granted.